UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


KCS Contracting, LLC,                               Case No. 3:21-cv-1219

        Plaintiff

    v.                                              MEMORANDUM OPINION
                                                                                                  AND ORDER

City of Perrysburg, Ohio, et al.,

        Defendants

## I.     INTRODUCTION

Pending is Plaintiff KCS Contracting, LLC's motion for a temporary restraining order. (Doc. No. 1-5). Defendants City of Perrysburg, Ohio (the "City"), Tom Macklin, and Kathryn Sandretto filed an opposition brief, (Doc. No. 5), and Plaintiff filed a reply brief. (Doc. No. 9).

## II.     BACKGROUND

In April 2021, the City of Perrysburg opened sealed bids for the Interior Alterations #38 Perrysburg Fire Station #M-2292 (the "Project"). This Project "includes interior alteration to dormitory walls, door, a toilet shower room, and an equipment room [of the Fire Station] … [to] create 'hot,' 'warm' and 'cold' zones in the fire station, which will assist firefighters/paramedics when returning from a call in removing their uniforms and equipment safely and reentering the fire station in stages in an effort to prevent carcinogens from entering the living quarters at the fire station." (Doc. No. 5-1 at 2).

Seven contractors submitted bids on the project. KCS's bid was the lowest by approximately $20,000. Although the City alleges KCS's bid was incomplete and contained

irregularities, City Law Director Kathryn Sandretto proceeded to substantively evaluate KCS's bid. (Doc. No. 5-2 at 2).

In the course of her review, she acquired KCS's credit report and found that KCS's credit score was lower than the next lowest bidder. Additionally, KCS's credit report revealed multiple tax liens. Sandretto testified that though "some of the liens were dismissed, released, or otherwise resolved, [she] considered the existence of multiple liens as relevant to Plaintiff's financial condition and whether Plaintiff was a 'responsible bidder.'" (*Id.* at 2-3).

Aside from KCS's financial situation, Sandretto also found KCS's conduct and performance on previous contracts troublesome. Specifically, Sandretto learned that KCS was removed as a sub-contractor from a 2019-2020 project at the Andover Place Apartments following numerous flaws in workmanship. Sandretto obtained photos of the errors taken by an investigator for the City of Toledo as well as an audio recording of a Toledo City Council meeting in which this project was discussed. (*Id.* at 13-17; Doc. No. 7, Exhibit A).

The underlying topic at issue was the possible requirements for licensing carpenters. An inspector for the City of Toledo voiced his support for requiring licensure and cited KCS's work on the Andover Place Apartments as a "case study" of the work that occurs in the absence of licensure requirements. (Doc. No. 7, Exhibit A). The inspector described the deficiencies in the wood framing, citing missing fasteners from sheeting in the floor and the walls, bearing studs that were left out of walls, and walls that were framed incorrectly including walls ending in the middle of a doorway. (*Id.* at 1:19-1:36). He stated the substandard framing was "some of the worst I've ever seen." (*Id.* at 1:39-1:44). The inspector expressed his concern that this work occurred under the supervision of a carpenter foreman and attributed these errors to a "lack of training and a lack of knowledge." (*Id.* at 4:06-4:08).

KCS's owner, Keith Michalski, was present at the Toledo City Council meeting and spoke in opposition to requirements for carpenter licensing. (*Id.* at 5:44-7:28). In doing so, he affirmed that he was the contractor to which the inspector was referring and admitted to the workmanship errors described by the inspector. But he asserted, "all of those mistakes would have been found during the building inspection process because it wasn't done right." (*Id.* at 7:07-7:13). He urged the City Council to consider not just this project, but the majority of KCS's projects that had been completed correctly without the licensure requirements. According to Michalski, "bottom line is here: through the inspection process, all of these problems that I did, would have been found. It doesn't matter if these guys are licensed or not, those would have been found through inspection." (*Id.* at 6:18-6:31).

After reviewing the photographs and audiotape of this Toledo City Council meeting, Sandretto was concerned with not only with the workmanship flaws themselves, but also Michalski's response. Specifically, because "Plaintiffs owner's testimony suggesting errors in workmanship should not be a concern because an inspector presumably would find them," Sandretto "determined that if the City moved forward with Plaintiff, the City would need to hire a full-time inspector or general contractor to oversee Plaintiffs work and ensure the work was performed correctly." (Doc. No. 5-2 at 5).

In light of all of the information in her possession, Sandretto concluded that:

selecting Plaintiff for the Project would result in risk to the City, its Fire Division, and its taxpayers, for reasons including that Plaintiff[']s financial situation was potentially unstable, and less secure than Lathrop's; that Plaintiffs admitted workmanship errors in past projects risked similar problems on this Project; that Plaintiff may not disclose errors in its own work, and rather leave defects for possible discovery by a third party inspector; that Plaintiff had performed poorly on at least the Andover Place Apartments construction project; that the testimony about the Andover Place Apartments project indicated Plaintiff may have issues with supervision and training; and that selecting Plaintiff would cause the City additional expense because it would need to hire a full-time inspector or general contractor to oversee Plaintiffs work.

(*Id.* at 5).

3

On April 28, 2021, Sandretto presented her findings and recommendation to the Perrysburg City Council's Service Committee. (Doc. No. 7, Exhibit E at 33:38-49:38). In doing so, she played the audio recording of Michalski's testimony at the Toledo City Council meeting and provided the Councilmembers with the photos of the deficient workmanship performed at the Andover Place Apartments. On reviewing the photos, one Councilmember characterized the photos as "pretty damning because as a layperson I can look at this and say this is not acceptable work. … It concerns me that this even exists." (*Id.* at 44:32-44:50). Ultimately, the Service Committee unanimously concluded KCS was not a "responsible" bidder because of the tax liens as well as past conduct and performance.

The happenings of the Service Committee meeting were relayed to the Perrysburg City Council at its May 4, 2021 meeting. (Doc. No. 7, Exhibit F at 13:31-15:58). Resolution 37-2021 authorizing an agreement with the second lowest bidder for the Project was then brought before the City Council for approval. (*Id.* at 21:25). Before City Council voted on this Resolution, Sandretto explained the bidding process, relayed the bids received, and described why KCS was not chosen as the "lowest responsive and responsible bidder," even though it was the lowest. (*Id.* at 22:14-28:55). She again showed the photos of the deficient workmanship at the Andover Place Apartments and played the audio recording of Michalski's testimony before the Toledo City Council. After Sandretto presented this information, the Perrysburg City Council unanimously voted to approve the Resolution awarding the contract for the Project to the next lowest bidder.

On May 5, 2021, Sandretto sent a letter to KCS notifying it of the City Council's decision and reasoning. (Doc. No. 1-3 at 229-30). Sandretto explained that KCS's financial situation was inferior to the next lowest bidder because KCS's credit score was lower and there were multiple current tax liens against KCS. Regarding KCS's conduct and performance on previous contracts, Sandretto cited KCS's flawed workmanship on the Andover Place Apartments, Michalski's

4

testimony at the Toledo City Council meeting, and lawsuits involving KCS's removal from other projects. At the conclusion of the letter, Sandretto notified KCS of the right to protest the City's decision.

KCS, through counsel, timely sent a written protest to the bid. (*Id.* at 232-34). In doing so, KCS offered to provide additional financial information to prove it was able to perform the project and disputed the City's finding regarding the tax liens, as those liens had been resolved and released. As for the work at the Andover Place Apartments, KCS asserted it was not defective but incomplete, and that its removal from the project resulted from lack of payment, not an inspection by the City of Toledo. As for Michalski's testimony before the Toledo City Counsel, KCS spoke to union versus non-union labor but did not address Michalski's statements regarding the safety net of inspections. Finally, KCS objected to the City's finding that it was subject to other lawsuits and offered to provide the City with additional references.

On May 18, 2021, Michalski presented his case to the Perrysburg City Council. (Doc. No. 7, Exhibit G at 1:50-14:13). First, he explained that KCS's credit report was dated and inaccurate, admitting that he failed to update it. He affirmed KCS had are no current tax liens and explained that those liens resulted of KCS's dispute of the state taxes assessed. Michalski testified about KCS's current financial status and offered to provide the City with proof that KCS was in good-standing with its four top suppliers. As to the Andover Place Apartments, Michalski maintained that KCS was not removed from the project due to an inspection by the City of Toledo but due to a dispute with the general contractor of the project. He did not deny that the workmanship in the photos was an accurate depiction of the project work. But he did dispute who took those photos, and alleged the deficiencies evidenced in the photos were due to KCS's removal from the project before it was able to complete it. Finally, Michalski alleged his comments made at the Toledo City

5

Council meeting were taken out of context because his drywallers were not responsible for the structural integrity of the build.

At the close of his presentation, Michalski cited the previous work KCS had done for the City and offered to provide additions references to attest to KCS's ability to successfully complete the Project. He urged City Council to reconsider its decision, and the City Council took the matter under advisement. When the matter was brought to the floor at the June 1, 2021 City Council meeting, one city Councilmember moved to reconsider. (Doc. No. 7, Exhibit H at 6:20-7:48). But because no one seconded that motion to reconsider, the City Council's decision to award the contract to the next lowest bidder was affirmed.

On June 18, 2021, KCS filed suit in the Wood County Court of Common Pleas, alleging the City had violated Ohio competitive-bidding law by not selecting KCS as the "lowest responsive and responsible bidder." At that time, KCS also moved for a temporary restraining order seeking to enjoin the City from awarding the contract to the next lowest bidder.

### III.  STANDARD

Rule 65 of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order ("TRO") if the movant can "clearly show that immediate and irreparable injury, loss, or damage will result" in the absence of such relief. Fed. R. Civ. P. 65(b)(1)(A). In determining whether the movant has satisfied his burden, the court will consider the following factors:

> (1) whether the movant has a "strong" likelihood of success on the merits;
> (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Summit Cnty. Democratic Cent. & Exclusive Comm. v. Blackwell*, 388 F.3d 547, 550-51 (6th Cir. 2004) (quoting *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). The same factors are used to determine whether a preliminary injunction should be granted. *Summit Cnty.*, 388 F.3d at 550.

The Sixth Circuit has held that "[a]s long as there is some likelihood of success on the merits, these factors are to be balanced, rather than tallied." *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017). But the Supreme Court has held the second factor is dispositive as well, stating, "Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22-24 (2008) (emphasis in original).

## IV. DISCUSSION

In the Complaint, KCS seeks a declaratory judgment and injunctive relief under Ohio law. Additionally, KCS asserts a federal cause of action under § 1983 asserting violations of the Due Process Clause.[1]

**A.  Ohio Law Claims**

Ohio competitive-bidding law requires municipalities to award public contracts to the "lowest responsive and responsible bidder." O.R.C. § 9.312(A); O.R.C. § 735.05 (Municipal public contracts are to be awarded to the "lowest and best bidder."). But the city officials have "considerable discretion in evaluating bidders and awarding contracts." *State ex rel. Glidepath, LLC v. Columbus Reg'l Airport Auth.*, 2012-Ohio-20, 2012 WL 19715, at *3 (Ohio Ct. App. Jan. 5, 2012) (citing *Cedar Bay Constr., Inc. v. City of Fremont*, 552 N.E.2d 202, 205 (Ohio 1990)). "[C]ourts cannot interfere in the exercise of this discretion unless it clearly appears that the city authorities in whom such discretion has been vested are abusing the discretion so vested in them." *Cedar Bay*, 552 N.E.2d at 205 (further citation omitted).

---

[1] In the Complaint, KCS also alleges a § 1983 claim under the Equal Protection Clause. But in the motion for a temporary restraining order, KCS makes no attempt to show it is likely to succeed on that claim. Because KCS failed to satisfy its burden, this claim is not grounds for a temporary restraining order.

There is no dispute that KCS was the lowest bidder. Additionally, though the City now asserts KCS's "bidding documents contained informalities or irregularities, and that the City had the ability to immediately reject Plaintiff's bid on that basis," (Doc. No. 5 at 5), the City does not argue in its opposition brief that KCS was not a "responsive" bidder. Instead, the City claims only that KCS was not a "responsible" bidder and relies on its discretion to make this determination and award public contracts. (*Id.* at 11-12).

To determine whether a bidder is "responsible", the municipality "shall consider" the following factors: "the experience of the bidder, the bidder's financial condition, conduct and performance on previous contracts, facilities, management skills, and ability to execute the contract properly." O.R.C. § 9.312(A). Here, the City determined KCS was not a responsible bidder due to its financial situation and conduct and performance on previous contracts.

The City Council determined KCS's financial condition was inferior to the next lowest bidder based upon comparison of the credit reports of the two contractors. Not only did KCS have a lower credit score, but several tax liens. The next lowest bidder had none. In its written protest, while KCS admitted to four small tax liens between the years 2017 and 2020, it alleged these had been resolved and released. (Doc. No. 1-3 at 232). The credit report confirmed four tax liens had been "released" for the amounts alleged in KCS's written protest. (*Id.* at 157). But the credit report also revealed eight additional tax liens dating from 2015 through 2018 whose status remained "lien" as opposed to "released." (*Id.* at 157-58). Although Michalski asserted the credit report was dated, by his own fault, and offered to provide updated financial information, the City did not abuse its discretion by relying on KCS's credit report when making its finding regarding KCS's financial status.

The City's decision regarding KCS's conduct and performance was based heavily on its workmanship on the Andover Place Apartments. Although KCS alleges the City's findings in this

8

respect were based upon hearsay and misunderstanding, the City Council reviewed photos of the actual work when assessing KCS's performance on the job. The City Council also heard the audio recording of the Toledo City Council meeting where Michalski admitted that KCS was the contractor on this job and had performed the deficient work. While Michalski represented to the Perrysburg City Council that the photographs do not accurately portray KCS's work because KCS was not permitted to complete the project, he fails to address why the opportunity to complete the project would affect why "all of those mistakes" were made in the first place. (Doc. No. 7, Exhibit A at 7:07-7:13).

Relatedly, Michalski alleged his comments regarding inspectors were taken out of context and should not be considered in the course of this bid. Michalski attempted to clarify that he intended to state it was the responsibility of the building and not his drywallers to ensure the building was structurally sound. If anything, this suggestion that it is ultimately the building inspector's responsibility to ensure the work was properly completed merely validates the City's concern over the potential need to hire a full-time inspector to oversee KCS's work.

Although Michalski urged the City Council to consider KCS's entire body of work, including smaller projects performed for the City, the City did not abuse its discretion by considering KCS's workmanship on the Andover Place Apartments. As pointed out by one Councilmember, the errors in that project were obvious to a layperson. Though KCS may have fixed its mistakes had it not been removed from the project, it is reasonable to conclude those errors should have never occurred. Additionally, in light of Michalski's comments, it was not unreasonable for the City to conclude additional expense may be required to oversee KCS's work. Therefore, the City did not abuse its discretion in finding KCS was not a "responsible" bidder because of previous conduct and performance.

Because the City did not abuse its broad discretion in finding KCS was not a "responsible" bidder, KCS is not likely to succeed on its claim for a declaratory judgment and injunctive relief.

**B.      Section 1983 Claims**

"To state a claim under 42 U.S.C. § 1983, the plaintiff must show two things: (1) that the defendant acted under color of state law, and (2) that the defendant deprived the plaintiff of a federal right, either statutory or constitutional." *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992). There is no dispute that the City acted under the color of state law in choosing not to award the contract to KCS, even though KCS was the lowest bidder. Therefore, KCS need only show the City's actions deprived them of a federal right.

KCS alleges the City deprived it of procedural due process when it rejected KCS's bid. To state a procedural due process claim, KCS must first show it had a Fourteenth Amendment property interest in the contract. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). The Sixth Circuit has held that this can be done in two ways: "A bidder can either show that it actually was awarded the contract and then deprived of it, or that, under state law, the [City] had limited discretion, which it abused, in awarding the contract." *Enertech Elec., Inc. v. Mahoning Cnty. Comm'rs*, 85 F.3d 257, 260 (6th Cir. 1996) (citing *United of Omaha*, 960 F.2d at 34).

There is no dispute KCS was never awarded the contract here. Instead, KCS asserts it has a property interest because Ohio law requires municipalities to award public contracts to the "lowest responsive and responsible" or "lowest and best" bidder. O.R.C. §§ 9.312(A) & 735.05.

Although the mandatory language of the Code suggests a limitation on discretion, Ohio case law provides that the City has broad discretion when it comes to determining which bidder is "best" and whether a bidder is "responsible." *See Cedar Bay*, 552 N.E.2d at 205. In the face of a similar law, the Supreme Court of Ohio found no property interest existed "[g]iven the extensive discretion of the city in considering bids" and the fact that "the city did not abuse its discretion." *Cleveland Constr.,*

*Inc. v. Cincinnati*, 888 N.E.2d 1068, 1072 (Ohio 2008); *see also Rack & Ballauer Excavating Co, Inc. v. City of Cincinnati*, No. , 2013 WL 3322071, at *5 (S.D. Ohio July 1, 2013) ("[T]he Plaintiffs have a property interest only if the City had no discretion to reject their bid or the City had such limited discretion that failing to award the contract to Plaintiffs amounts to an abuse of discretion.").

As discussed above, there is not a substantial likelihood that the City will be found to have abused its broad discretion by denying KCS the contract for the Project. In turn, there is not a substantial likelihood that a property interest exists here.

Even if a property interest did exist, KCS makes no attempt to show "the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated his rights to due process." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005). That is, though KCS alleges in the Complaint that state law remedies are not adequate to address the alleged deprivation, it does not address this aspect of its procedural due process claim in its motion for a temporary restraining order. Therefore, KCS fails to satisfy its burden of showing it is likely to succeed on its procedural due process claim.

**C.    Irreparable Harm**

Because "[t]he intent of competitive bidding is to protect the taxpayer, prevent excessive costs and corrupt practices, and provide open and honest competition in bidding for public contracts," lost-profit damages cannot be awarded to wrongfully rejected bidders. *Cementech, Inc. v. City of Fairlawn*, 849 N.E.2d 24, 27 (Ohio 2006). Instead, "a rejected bidder is limited to injunctive relief." *Id.* But if preliminary injunctive relief is sought, denied, and no longer available, a rejected bidder "may recover reasonable bid-preparation costs as damages" if that bidder "establishes that a public authority violated state competitive-bidding laws in awarding a public-improvement contract." *Meccon, Inc. v. Univ. of Akron*, 933 N.E.2d 231, 234 (Ohio 2010).

In its motion for a temporary restraining order, KCS asserts it will experience "harm to its name and goodwill — in addition to recovering the work, profits, and experience on the project itself." (Doc. No. 1-5 at 13). Should KCS succeed on its challenge to the City's finding, any harm to its name and goodwill will be eliminated and KCS will recover the reasonable bid-preparation costs. Although KCS will lose the work, profits, and experience on this Project, I do not find this harm to be irreparable.

## V. Conclusion

Because KCS has not established a strong likelihood of success or that irreparable injury is likely, KCS's motion for a temporary restraining order is denied.

The parties shall file a joint status report by July 7, 2021. This status report should address whether KCS wishes to pursue a preliminary injunction and expedited discovery in light of my ruling on the motion for a temporary restraining order. If KCS does seek to proceed with these pending motions, the status report should propose a briefing schedule for those motions.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge